UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------X

LILY PRODUCE INC.,

              Plaintiff,              **REPORT & RECOMMENDATION**

     v.

5 BOROUGH MARKET II CORP. and     25-cv-00632 (DG) (LKE)
ASHRAF A. SHARHAN,

              Defendants.

----------------------------------------X

**LARA K. ESHKENAZI**, United States Magistrate Judge:

      Before the Court is the motion of Lily Produce, Inc. ("Plaintiff" or "Lily") for default judgment against Defendants, 5 Borough Market II Corp. ("5 Borough") and Ashraf A. Sharhan ("Sharhan") (collectively, "Defendants"). For the reasons set forth below, the Court respectfully recommends granting the motion in its entirety.

**I.    BACKGROUND**

      Plaintiff Lily is a produce wholesaler based in New York and licensed as a dealer under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499e(c)(5) ("PACA") under license number 20140950. (Compl. ¶ 4, ECF 1.) Plaintiff alleges that Defendant 5 Borough is a retail produce seller, and that Defendant Sharhan is "an officer, director and/or equity holder of 5 Borough." (*Id*. ¶¶ 5, 6.) Plaintiff further alleges that Defendant 5 Borough "received or contracted to receive" sufficient quantities of produce per day to meet the 2,000-pound threshold required to be classified as a "dealer" under PACA. (*Id*. ¶ 10); *see* 7 C.F.R. § 46.2(x). According to Plaintiff, Defendant 5 Borough purchased and received $208,162.44 in produce, but failed to pay for the

goods when payment was due. (Compl. ¶¶ 9, 12.) Plaintiff claims that 5 Borough owes Plaintiff $204,558.12 in principal, which it has failed to pay despite repeated demands. (*Id*. ¶ 12.)

Plaintiff commenced this suit with the filing of its complaint on February 5, 2025, seeking relief under the trust provisions of PACA and under common law. (*See generally,* ECF 1.) Specifically, the Complaint alleges: (1) failure to make payment to Plaintiff from the statutory trust in violation of PACA and PACA regulations (*id*. ¶¶ 17-19); (2) failure of Defendants to "promptly tender to Plaintiff full payment for those shipments pursuant to PACA," (*id*. ¶¶ 20-24); (3) unlawful dissipation of PACA trust assets by a corporate official (*id*. ¶¶ 25-31); (4) failure to pay for goods (*id*. ¶¶ 32-34); (5) breach of contract (*id*. ¶¶ 35-40); and entitlement to damages, interest, and attorneys' fees under PACA from all Defendants (*id*. ¶¶ 41-45).

Plaintiff served Defendant 5 Borough with the Summons and Complaint by delivering copies of both to the Secretary of State's office on February 7, 2025. (Decl. Gregory Brown ¶ 3, ECF 12 ("Brown Decl.").) Plaintiff mailed an additional copy of the Summons and Complaint to 5 Borough on February 11, 2025, and filed proof of service with this Court the same day. (Proof of Serv., ECF 5; Brown Decl. ¶ 3.) Plaintiff served Defendant Sharhan with the Summons and Complaint by delivering a true copy of both documents to his last known residence on February 12, 2025. (Proof of Serv., ECF 6; Brown Decl. ¶ 4.) Plaintiff mailed an additional copy to Defendant Sharhan on February 12, 2025, and filed proof of service with this Court on February 13, 2025. (Brown Decl. ¶ 4.) Defendants failed to answer or otherwise respond to the Complaint within the twenty-one day period provided by Fed. R. Civ. P. 12(a), which expired on March 6, 2025. (*Id.* ¶ 7.)

Plaintiff received a Clerk's Certificate of Default on April 3, 2025. (ECF 10.) Defendants failed to appear at the default conference held before this Court on April 7, 2025. (Min. Entry April

7, 2025.) Plaintiff filed a motion for default judgment on April 25, 2025, (ECF 11-15) and the Honorable Diane Gujarati referred the motion to the undersigned for a report and recommendation, (4/29/2025 Text Order).

## II.    DISCUSSION

### A.    Jurisdiction

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Here, Plaintiff asserts claims under PACA, 7 U.S.C. § 499e(c)(5), as well as two common law claims under New York State Law. (Compl. ¶¶ 1, 2.) Given that this action arises under the laws of the United States, the Court has subject matter jurisdiction over this action. *See, e.g.*, *Rocha v. Bakhter Afghan Halal Kababs, Inc.*, 44 F. Supp. 3d 337, 345 (E.D.N.Y. 2014). As for Plaintiff's common law claims of failure to pay for goods and breach of contract, the Court may exercise supplemental jurisdiction if the claims arise out of the same facts and circumstances as the PACA claims. 28 U.S.C. § 1367(a). Here, the Court respectfully recommends exercising supplemental jurisdiction over the common law claims because all claims arise from the same factual allegations concerning Defendants' failure to properly pay Plaintiff as required by PACA.

"For a federal court to exercise personal jurisdiction over a defendant, the plaintiff's service of process upon the defendant must have been procedurally proper." *Windward Bora LLC v. Valencia*, No. 19-cv-4147 (NGG) (RER), 2020 WL 6470293, at *2 (E.D.N.Y. Oct. 16, 2020), *adopted by* 2020 WL 6450286 (E.D.N.Y. Nov. 3, 2020). Federal Rule of Civil Procedure 4(h)(1)(A) provides that a corporate defendant must be served "in the manner prescribed by Rule 4(e)(1) for serving an individual[.]" Fed. R. Civ. P. 4(h)(1)(A). Moreover, under subsection (B), the summons and complaint may be served "by delivering a copy … to an officer, a managing or

general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1)(B). Rule 4(e)(1) states that an individual may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]" Fed. R. Civ. P. 4(e)(1).

The New York Business Corporation Law ("NYBCL") mandates that "[t]he secretary of state shall be the agent of every domestic corporation and every authorized foreign corporation upon whom process against the corporation may be served." N.Y. Bus. Corp. Law § 304(a). Indeed, "[n]o domestic or foreign corporation may be formed or authorized to do business in this state under this chapter unless in its certificate of incorporation or application for authority it designates the secretary of state as such agent." *Id.* at § 304(b). Lastly, NYBCL section 306 provides that:

> Service of process on the secretary of state as agent of a domestic … corporation shall be made …. [by] [p]ersonally delivering to and leaving with the secretary of state or a deputy, or with any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany, duplicate copies of such process together with the statutory fee…. Service of process on such corporation shall be complete when the secretary of state is so served.

*Id.* § 306(b)(1).

Here, Plaintiff has properly served Defendants in this action. 5 Borough is a New York corporation, so service of process of the Summons and Complaint upon the New York Secretary of State constitutes proper service on Defendant 5 Borough. On February 7, 2025, process server Mark McClosky delivered and left two copies of the Summons and Complaint, along with the statutory fee, with Sue Zouky, the Authorized Agent in the Office of the Secretary of State of New

4

York. (Proof of Serv., ECF 5.) Ms. Zouky was served at the Office of the Secretary. (*Id.*) Plaintiff subsequently filed the proof of service with the Court on February 11, 2025. (*Id.*)

On February 12, 2025, Plaintiff properly served Defendant Sharhan. (Proof. of Serv., ECF 6.) The Affidavit of Service executed by Donald Delprete indicates that he completed personal service on Defendant Sharhan at his place of residence by depositing a copy of the Summons and Complaint with Defendant Sharhan's co-tenant, Ashwak Asharhan, who Delprete attested was "fourteen (14) years of age or older and informed … of the contents therein, in compliance with state statutes," (*Id.*; Aff. of Additional Mailing, ECF 6-1); Fed. R. Civ. P. 4(e)(1) ("[A]n individual … may be served in a judicial district of the United States by following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located[.]"); N.Y. C.P.L.R. § 308(2) (describing service on a natural person "by delivering the summons within the state to a person of suitable age and discretion at the actual…dwelling place or usual place of abode of the person to be served and by…mailing the summons to the person to be served at his or her last known residence"). Plaintiff subsequently filed the proof of service and an affidavit of additional mailing with the Court on February 13, 2025. (ECF 6.)

"[A] civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). A corporation is deemed to be a resident of "any district" in "a State which has more than one judicial district and in which . . . [that] corporation is subject to personal jurisdiction at the time an action is commenced." *Id.* at § 1391(d). As alleged, 5 Borough is a New York corporation with a principal place of business in Brooklyn, New York. (Compl. ¶ 5.) Defendant Sharhan is also a resident of Staten Island, New York. (Aff. of Serv., ECF 6.) Therefore, venue in the Eastern District of New York is proper. *See* 28 U.S.C § 1391(b)(1).

5

B.  **Default Judgment Standard**

Under Rule 55 of the Federal Rules of Civil Procedure, there are two steps to entering a default judgment. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). This first step is nondiscretionary. *See United States v. Conolly*, 694 F. App'x 10, 12 (2d Cir. 2017). Second, after the Clerk of the Court enters a defendant's default, the court may enter a default judgment. *See* Fed R. Civ. P. 55(b).

Whether or not a default judgment is issued is within the discretion of the court. When evaluating a plaintiff's application for a default judgment, "a court is required to accept all … factual allegations as true and draw all reasonable inferences in [plaintiff's] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *La Barbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotations and citations omitted); *see TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.*, 536 F. App'x 45, 46 (2d Cir. 2013) ("[P]rior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law.") (internal quotations and citations omitted)).

"Default judgments are generally disfavored and are reserved for rare occasions." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011) (quoting *Enron Oil Corp.*, 10 F.3d at 96) (internal quotation marks omitted). While the Second Circuit has recognized the

6

"push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] ... delay and clog its calendar," it has held that a district court must balance that interest with its responsibility to "afford[] litigants a reasonable chance to be heard." *Enron Oil Corp.*, 10 F.3d at 96. Thus, considering the "oft-stated preference for resolving disputes on the merits," doubts should be resolved in favor of the defaulting party. *See id.* at 95-96. Accordingly, a plaintiff is not entitled to a default judgment as a matter of right simply because defendants are in default. *See Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

Once the Clerk of the Court enters a certificate of default, a defendant is deemed to have admitted the well-pled allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Montcalm Publ'g Corp. v. Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y. 1992). A fact is not considered well-pled, however, "if it is inconsistent with [the] other allegations of the complaint or with facts of which the court can take judicial notice or is contrary to uncontroverted material in the file of the case." *Hop Hing Produces Inc. v. Lin Zhang Trading Co., Inc.*, No. 11-cv-3259 (NGG) (RLM), 2013 WL 3990761, at *3 (E.D.N.Y. Aug. 5, 2013) (citations and internal quotation marks omitted). Ultimately, whether to grant a motion for default judgment is "left to the [court's] sound discretion." *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (quoting *Enron Oil Corp.*, 10 F.3d at 95); *Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. D & A Bus Co.*, 270 F. Supp. 3d 593, 606 (E.D.N.Y. 2017).

"In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default." *Double Green Produce, Inc. v. Forum*

*Supermarket Inc.*, No. 18-cv-2660 (MKB) (SJB), 2019 WL 1387538, at *2 (E.D.N.Y. Jan. 29, 2019) (citing *Enron Oil Corp.*, 10 F.3d at 96; *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170-71 (2d Cir. 2001)). "These factors are 1) whether the defendant's default was willful; 2) whether the defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Id.* at *2 (quoting *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-cv-9044 (LTS) (GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003)) (internal quotation marks omitted).

As to the first factor, "a defendant's nonappearance and failure to respond sufficiently demonstrates willfulness." *Luna v. Gon Way Constr., Inc.*, No. 16-cv-1411 (ARR) (VMS), 2017 WL 835321, at *4 (E.D.N.Y. Feb. 14, 2017) (collecting cases), *report and recommendation adopted*, 2017 WL 835174 (E.D.N.Y. Mar. 2, 2017). Here, neither Defendant has filed an answer or otherwise responded to the Complaint. Accordingly, Defendants' willful non-engagement and failure to answer or otherwise participate sufficiently demonstrates willfulness. *See Traffic Sports USA v. Modelos Restaurante, Inc.*, No. 11-cv-1454 (ADS) (AKT), 2012 WL 3637585, at *2 (E.D.N.Y. Aug. 1, 2012), *report and recommendation adopted*, 2012 WL 3626824 (E.D.N.Y. Aug. 22, 2012) (finding the defendant's failure to respond "in any way" to the Complaint, combined with the affidavits demonstrating proper service, confirmed beyond "any doubt" that the defendant's failure to respond was willful).

Turning to the second factor, Defendants' failure to appear sufficiently in this action has left the Court unable to assess whether they have a meritorious defense. "Where a defendant fails to answer the complaint, courts are unable to make a determination whether the defendant has a meritorious defense to the plaintiff's allegations[.]" *See Joseph v. HDMJ Rest., Inc.*, 970 F. Supp.

8

2d 131, 143 (E.D.N.Y. 2013). This factor therefore weighs in favor of granting a default judgment against Defendants.

Finally, with respect to the third factor, Plaintiff will be prejudiced if the motion for default judgment is denied because "[w]ithout the entry of a default judgment, [Plaintiff] would be unable to recover for the claims adequately set forth in the Complaint." *Korzeniewski v. Sapa Pho Vietnamese Rest. Inc.*, No. 17-cv-5721 (MKB) (SJB), 2019 WL 312149, at *4 (E.D.N.Y. Jan. 3, 2019) (quoting *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-cv-946 (JS) (AKT), 2015 WL 1299259, at *15 (E.D.N.Y. Mar. 23, 2015)). Accordingly, the Court recommends finding that Defendants' failure to sufficiently appear in this matter constitutes an admission of the factual allegations therein.

### C. Liability

#### 1. 5 Borough's Liability under PACA

Plaintiff argues that it is entitled to relief under PACA because Defendants violated PACA's trust provision. (Mem. L. at 2-8, ECF 14.) The Court agrees. For a plaintiff to succeed on a claim for violation of the PACA trust, it must show:

> First, a plaintiff must have sold defendant perishable agricultural commodities. Second, plaintiff must show that the purchaser of the perishable agricultural commodities, the defendant, was a "commission merchant, dealer, or broker," pursuant to Section 499(a) of PACA…Third, the transaction must have occurred in interstate commerce. Fourth, the seller of the perishable agricultural commodities has not received full payment from defendants on the transaction. Finally, the seller must have preserved its interest in the PACA trust by giving written notice.

*A&B Alt. Mktg. Inc. v. Int'l Quality Fruit Inc.*, 521 F. Supp. 3d 170, 173 (E.D.N.Y. 2021) (quoting *Associated Produce, Inc. v. LaSejita Produce, Inc.*, No. 19-cv-5894, 2020 WL 2476036, at *4

(E.D.N.Y. Apr. 22, 2020), *report and recommendation adopted*, 2020 WL 2475620 (E.D.N.Y. May 13, 2020)).

First, PACA defines "perishable agricultural commodities" as "[f]resh fruits and fresh vegetables of every kind and character," including frozen fruits and vegetables or fruits and vegetables packed in ice. 7 U.S.C. § 499a(b)(4). The United States Department of Agriculture defines "fresh fruits and fresh vegetables" as including "all produce in fresh form generally considered as perishable fruits and vegetables." 7 C.F.R. § 46.2(u). The Complaint alleges that Plaintiff "engaged in the business of buying and selling wholesale quantities of fresh fruits and vegetables ('Produce')," and that Plaintiff "sold and delivered to Defendants wholesale quantities of Produce[.]" (Compl. ¶¶ 4, 8.) In addition, Plaintiff's invoices to Defendants indicate that Plaintiff sold Defendant 5 Borough a wide variety of fresh fruits and vegetables, including loose peaches, cilantro, and beets, among others. (Decl. Kwang Baik ¶ 9, ECF 13 ("Baik Decl."); Baik Decl. Ex. K, ECF 13-4.)

As to the second element, this Court finds that Defendant 5 Borough is a "dealer" as defined by PACA. PACA defines a dealer as:

> [A]ny person engaged in the business of buying or selling in wholesale or jobbing quantities, as defined by the Secretary, any perishable agricultural commodity in interstate or foreign commerce, except that … no person buying any such commodity solely for sale at retail shall be considered as a "dealer" until the invoice cost of his purchases of perishable agricultural commodities in any calendar year are in excess of $230,000.

7 U.S.C. § 499a(b)(6)(B). PACA regulations define "wholesale or jobbing quantities" as produce in "aggregate quantities of all types of produce totaling one ton (2,000 pounds) or more weight in any day shipped, received, or contracted to be shipped or received." 7 C.F.R. § 46.2(x). While Defendant 5 Borough is not currently licensed under PACA, it is subject to its provisions as a

10

dealer due to the volume of produce received and the total cost of its purchases per year. Plaintiff has submitted a schedule of weights, showing that Defendants purchased hundreds of cases of produce from Plaintiff on January 2, 2025, totaling well above 2,000 pounds. (*See* Baik Decl. Ex. J, ECF 13-3.) Plaintiff also alleges that Defendants had purchased produce exceeding $230,000.00 in a calendar year prior to the transactions at issue. (Compl. ¶ 11.) As such, 5 Borough is a dealer as defined by PACA.

Next, the transactions identified in the invoices submitted by Plaintiff reflect produce involved in interstate transport. (*See* Baik Decl. Ex. K.) PACA provides that the term "interstate or foreign commerce" reflects commerce "between any State or Territory, or the District of Columbia and any place outside thereof," and involves trade in a commodity that "is part of that current of commerce usual in the trade in that commodity whereby such commodity and/or the products of such commodity are sent from one State with the expectation that they will end their transit, after purchase, in another." 7 U.S.C. §§ 499a(b)(3), 499a(b)(8). This expansive definition includes Plaintiff's shipments to 5 Borough; as sworn to by Mr. Baik, "[t]o the extent the produce was grown in the USA few, if any, of it came from New York and all was handled as part of the regular interstate trade of produce." (Baik Decl. ¶ 8.)

Finally, there is little dispute that Defendants have failed to pay the amount due under the invoices submitted by the Plaintiff. A produce purchaser violates PACA merely by failing to make prompt payment for the produce received. *Pac. Int'l Mktg., Inc. v. A & B Produce, Inc.*, 462 F.3d 279, 282 (3d Cir. 2006) ("A buyer's failure to tender prompt payment triggers civil liability"). PACA regulations define "prompt payment" for goods delivered by truck as within "10 days after the day on which the produce is accepted." 7 C.F.R. § 46.2(aa)(5). Delivery was completed on the transactions at issue between July 3, 2024, and January 14, 2025. (Compl. ¶ 8.) By the time the

11

instant action was initiated on February 5, 2025, Defendants had "failed to pay for the goods when payment was due, despite repeated demands, and [at that time] owe[d] Plaintiff the principal amount of $204,558.12." (*Id.* ¶ 12.) The Complaint was filed more than 10 days after the last transaction. Finally, Plaintiff preserved its PACA trust rights by including the statutory trust language on the face of its invoices to Defendants. (*See* Baik Decl. Ex. K.) As such, Plaintiff has demonstrated that Defendant 5 Borough is liable for violating its obligations under PACA to pay its debt owed to Plaintiff, a PACA beneficiary. *See, e.g.*, *S. Katzman Produce, Inc. v. Won*, No. 08-cv-2403 (KAM) (VVP), 2009 WL 2448408, at *4 (E.D.N.Y. Aug. 7, 2009); *Maspeth Trading, Inc. v. Ou Jiang Supermarket, Inc.*, No. 12-cv-1997 (NGG) (VMS), 2014 WL 3548507, at *4-5 (E.D.N.Y. July 17, 2014).

### 2. Sharhan's Liability under PACA

An individual in a position to oversee the proper application of PACA trust assets and who does not preserve trust assets for the beneficiaries has breached a fiduciary duty and is personally liable, regardless of the reason for the breach. *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 875-76 (2d Cir. 2021); *Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 705-06 (2d Cir. 2007). "'[A]ny act or omission which is inconsistent with this responsibility, including dissipation of trust assets, is unlawful.'" *Coosemans Specialties*, 485 F.3d at 706 (quoting 7 C.F.R. § 46.46(d)(1)). "Dissipation" is "any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid suppliers, sellers, or agents to recover money owed in connection with produce transactions." 7 C.F.R. § 46.46(a)(2). Where an individual is alleged to have been in control of PACA trust assets and is responsible for the dissipation, he can be personally liable and jointly and severally liable with the corporate dealer-buyer. *See Giumarra Agricom Int'l, LLC v. Fresh Growers Direct, Inc.*, No. 17-cv-2222 (CBA)

12

(PK), 2018 WL 1136037, at *5 (E.D.N.Y. Jan. 30, 2018), *report and recommendation adopted*, 2018 WL 1136085 (E.D.N.Y. Feb. 28, 2018); *Maspeth Trading*, 2014 WL 3762694, at *6; *Brigiotta's Farmland Produce & Garden Ctr., Inc. v. Przykuta, Inc.*, No. 05-cv-273S, 2006 WL 3240729, at *4 (W.D.N.Y. July 13, 2006).

Defendant Sharhan identified himself as the owner of 5 Borough on the credit application he submitted to Plaintiff. (Baik Decl. ¶ 6; Baik Decl. Ex. I, ECF 13-2.) He also inserted his name under the personal guarantee section of the application, indicating that he intended to be held personally liable for 5 Borough's debts to Plaintiff. (Baik Decl. Ex. I) Sharhan failed to turn over the PACA trust assets at issue when payment was due. (Baik Decl. ¶ 10.) As someone in a "position of control" over the PACA trust assets, Defendant Sharhan was personally responsible for ensuring that the PACA trust assets were not dissipated and were freely available to pay Plaintiff. *See Coosemans Specialties*, 485 F.3d at 706 (an officer or director of a produce company in a "position of control" over PACA trust assets is personally liable for a breach of the PACA trust regardless of whether or not he personally dissipated the assets.)

By virtue of Defendants' default, the Court may deem admitted Plaintiff's allegations that Sharhan was in a position to prevent the dissipation and/or conversion of the trust assets, but failed to do so. *See Won*, 2009 WL 2448408, at *4. Accordingly, the Court respectfully recommends finding that Plaintiff has made a sufficient showing that Defendant Sharhan breached his fiduciary duty as PACA trustee and is personally liable for the failure to preserve PACA trust assets for Plaintiff's benefit.

### 3. Liability for Common Law Claims

Plaintiff asserts that Defendants failed to pay for goods sold and delivered. (Mem. L. at 9; Compl. ¶¶ 32-34.) Under New York State law, to establish a claim for goods sold and delivered, a

13

plaintiff must prove "the purchase, sale and delivery of goods at an established price and nonpayment therefor." *Daewoo Int'l (Am.) Corp. Creditor Trust v. SSTS Am. Corp.*, No. 02-cv-9629, 2004 WL 830079, at *2 (S.D.N.Y. April 13, 2004) (citing *"21" Brands, Inc. v. R & J Emmet PLC*, No. 88-cv-8392, 1990 WL 180136, at *4 (S.D.N.Y. Nov. 13, 1990)). Plaintiff's submission of detailed invoices coupled with the declaration of its president establish the purchase and sale of the goods at issue. (Baik Decl. ¶¶ 9-10, Ex. K.) Plaintiff's president further declares that Defendants have not paid the amount due for the delivery of Plaintiff's produce. (*Id.* ¶ 10.) As such, this Court respectfully recommends finding that Plaintiff has established a claim for failure to pay for goods sold and delivered.

Finally, Plaintiff asserts a claim for breach of contract. (Compl. ¶¶ 35-40; Mem. L. at 8-9.) To prevail on a claim for breach of contract, a plaintiff must show "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) the failure of defendant to perform; and (iv) damages." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011). Plaintiff correctly asserts that invoices constitute a contract for the sale of goods. *Top Banana, L.L.C. v. Dom's Wholesale & Retail Center, Inc.*, No. 04-cv-2666, 2005 WL 1529736, at *5 (S.D.N.Y. June 28, 2005) (citing N.Y. U.C.C. § 2-201(2)). Plaintiff delivered its produce to Defendants, performing on the contract between the parties, and Defendants breached the contract by not paying the $204,558.12 due. (Mem. L. 8; Compl. ¶¶ 33-34; Baik Decl. ¶¶ 9-10, Ex. K.) This Court therefore respectfully recommends that Plaintiff has established its claim for breach of contract.

**D.     Damages**

Federal Rule of Civil Procedure 55(b)(2) provides courts discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991). "The court may

determine damages without an in-person hearing based on the plaintiff's affidavits so long as it can ensure a basis for the damages specified in the default judgment." *Zabrodin v. Silk 222, Inc.*, 702 F. Supp. 3d 102, 113 (E.D.N.Y. 2023) (internal citation omitted). The moving party is "entitled to all reasonable inferences from the evidence offered." *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

Under PACA Section 499e(a), a dealer found to be in violation "shall be liable to the person or persons injured thereby for the full amount of damages … sustained in consequence of such violation." Here, the Declarations of Gregory Brown and Kwang Baik, along with the attached exhibits, are sufficient to establish Plaintiff's damages. Plaintiff asserts that it is entitled to a principal amount of $204,558.12, which is a sum certain predicated on Plaintiff's unpaid invoices. (Brown Decl. ¶¶ 10-11; Baik Decl. Ex. K.) Defendants have not responded to Plaintiff's motion, and therefore have not opposed this amount or the validity of the invoices. Plaintiff's unopposed evidence is sufficient to establish that Plaintiff is owed $204,558.12 in damages for Defendants' failure to timely remit PACA trust funds to Plaintiff. *See, e.g.*, *G & P Warehouse, Inc. v. Cho's Church Ave. Fruit Mkt.*, No. 15-cv-6174 (NG) (CLP), 2016 WL 5802747, at *6 (E.D.N.Y. Aug. 12, 2016), *report and recommendation adopted*, 2016 WL 5716819 (E.D.N.Y. Sept. 30, 2016) (awarding damages based on invoices in a motion for default judgment); *Mikey's Choice LLC v. Fagos LLC*, No. 08-cv-4492 (RMM), 2010 WL 935550, at *3 (E.D.N.Y. Feb. 19, 2010), *report and recommendation adopted*, 2010 WL 934260 (E.D.N.Y. Mar. 12, 2010) (same).

### E.     **Prejudgment Interest**

Plaintiff alleges that it is entitled to prejudgment interest at the "higher of 18% per year or maximum statutory rate" as listed on its invoices. (Baik Decl. Ex. K; Brown Decl. ¶ 13; Mem. L. at 10). Plaintiff submitted a chart calculating prejudgment interest at a rate of 18% per year on the

principal amount through April 23, 2025, showing a total interest amount of $19,154.42. (Brown Decl. ¶ 13, Ex. E, ECF 12-5.) Courts in this Circuit have found that a plaintiff may recover for interest in an amount on the face of a plaintiff's invoices to the defendants. *See Top Banana*, 2005 WL 1529736, at *5; *see also Double Green Produce, Inc. v. Forum Supermkt. Inc.*, 387 F. Supp. 3d 260, 272 (E.D.N.Y. 2019) ("District courts routinely enforce contractual prejudgment interest provisions under PACA."). As such, this Court respectfully recommends that Plaintiff receive prejudgment interest at a rate of 18% per year, totaling $19,154.42 through April 23, 2025.

### F. Attorneys' Fees and Costs

Lastly, Plaintiff claims that it is entitled to $8,103.61 in attorneys' fees and costs through April 23, 2025. (Brown Decl. ¶¶ 13-14; Ex. F, ECF 12-6.) The Second Circuit has confirmed that, "where the parties' contracts include a right to [reasonable] attorneys' fees, they can be awarded as 'sums owing in connection with' perishable commodities transactions under PACA." *Coosemans Specialties*, 485 F.3d at 709 (citations omitted). Indeed, "PACA explicitly provides for an award of attorneys' fees when the parties' contract so provides, as the fees become subject to the PACA trust together with the principal debt." *Higueral Produce, Inc. v. CKF Produce Corp.*, No. 18-cv-6760 (NGG) (SJB), 2019 WL 5694079, at *11 (E.D.N.Y. Aug. 16, 2019) (quoting *G & P Warehouse, Inc.*, 2016 WL 5802747, at *9). As mentioned above, *supra* II.C.3, standard form provisions included on invoices are considered terms of a contract between two parties under PACA. Plaintiff's invoices state on their face that "[a]ll…attorneys' fees due [] shall be considered sums owing in connection with this transaction under the PACA trust." (*See* Baik Decl. Ex. K.)

Plaintiff's attorney submitted a billing statement describing the time spent working on this action. (Brown Decl. Ex. F.) Attorney Brown charged his normal hourly rate of $485.00, which he attests to be a fair and reasonable rate for an attorney with his experience in his particular specialty.

16

(Brown Decl. ¶15.) These hourly rates are reasonable. *See, e.g.*, *Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 243-44 (E.D.N.Y. 2025) (finding hourly rates of up to $650 for partners and $450 for senior associates reasonable).

Brown worked on this matter for a total of 14.9 hours and incurred a total of $7,226.50 in attorneys' fees. (Brown Decl. Ex. F.) Turning first to the hours billed, a party seeking to recover attorneys' fees "bears the burden of establishing that the number of hours for which compensation is sought is reasonable." *Stratakos v. Nassau County*, 574 F. Supp. 3d 154, 160 (E.D.N.Y. 2021) (internal quotations and citation omitted). An application for attorneys' fees must be supported "by accurate, detailed, and contemporaneous time records." *Lin v. DJ's Int'l Buffet Inc.*, No. 17-cv-4994 (JS) (AYS), 2025 WL 2409784, at *4 (E.D.N.Y. May 16, 2015) (quoting *La Barbera*, 752 F. Supp. 2d at 277); *see also Gesualdi v. Gen. Concrete, Inc.*, No. 11-cv-1866 (CBA) (JO), 2013 WL 1192967, at *9 (E.D.N.Y. Feb. 1, 2013) ("The absence of contemporaneous records precludes any fee award in all but the most extraordinary of circumstances." (citing *Scott v. City of New York*, 626 F.3d 130, 133-34 (2d Cir. 2010)). Contemporaneous time records submitted in support of an application need not contain great detail so long as they identify the general subject matter of time expenditures. *See Perdue v. City Univ. of N.Y.*, 13 F. Supp. 2d 326, 345 (E.D.N.Y. 1998).

Here, Attorney Brown has submitted detailed contemporaneous time records to support Plaintiff's request for fees. The entries are clear and substantive, and show that Brown spent a reasonable amount of time, 14.9 hours, working on this matter, including preparing the Summons and Complaint, requesting the Clerk's Certificate of Default, and preparing this motion. (*See* Brown Decl. Ex. F.) The total amount of time reflected in the billing records does not appear to be outside the norm for a default judgment action under PACA. *See Higueral Produce*, 2019 WL

5694079, at *13 (finding a total of 16.3 hours reasonable on a motion for default judgment under PACA); *see also Bally Produce Corp. v. Deng*, No. 23-cv-6580 (ENV) (RML), 2024 WL 3813382, at *6 (E.D.N.Y. June 11, 2024) (finding 11.75 hours reasonable on a motion for default judgment under PACA.) This Court thus respectfully recommends finding that the rates and times charged by Plaintiff's attorney are reasonable and that Plaintiff should be awarded attorneys' fees in the amount of $7,226.50.

Finally, Plaintiff requests an award of $877.11 for litigation costs. (*See* Brown Decl. Ex. F.) Reasonable and identifiable out-of-pocket disbursements ordinarily charged to clients are recoverable. *See LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). However, the party seeking to recover costs "bears the burden of adequately documenting and itemizing the costs requested." *Ganci v. U.S. Limousine Svc. Ltd.*, No. 10-cv-3027 (JFB) (AKT), 2015 WL 1529772, at *8 (E.D.N.Y. April 2, 2015) (quoting *Pennacchio v. Powers*, No. 05-cv-985 (RRM) (RML), 2011 WL 2945825, at *2 (E.D.N.Y. July 21, 2011)). Here, Plaintiff supports its request for an award of costs with an itemized accounting of costs incurred. (*See* Brown Decl. Ex. F.) The costs listed appear reasonable and customary, and include filing fees, process service costs, and online research charges. As such, this Court respectfully recommends that Plaintiff be awarded costs in the amount of $877.11.

### III.   CONCLUSION

Based on the foregoing, this Court respectfully recommends that (1) Plaintiff's motion for default judgment be granted in its entirety; (2) Plaintiff be awarded $204,558.12 for unpaid invoice amounts past due; (3) Plaintiff be awarded $19,154.42 in prejudgment interest through April 23, 2025; and (4) that Plaintiff be awarded $8,103.61 in attorneys' fees and costs.

A copy of this Report and Recommendation is being served on Plaintiff via ECF. The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation to Defendant

5 Borough Market II Corp at the following address forthwith: 99 Washington Avenue, Albany, NY 12231; and to mail a copy to Defendant Ashraf A. Sharhan at the following address forthwith: 505 Bard Avenue, Staten Island, NY 10310. Plaintiff is also directed to mail a copy of this Report and Recommendation to Defendants and to file proof of service of mailing by January 5, 2026.

Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Any requests for an extension of time to file objections shall be directed to Judge Diane Gujarati. If a party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision. *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
December 30, 2025

*Lara K. Eshkenazi*
LARA K. ESHKENAZI
United States Magistrate Judge